# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ANGELA D. HARDY, | : | Case No. 3:19-cv-382 |
| | : | |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

### I.  INTRODUCTION

In April 2016, Plaintiff Angela D. Hardy filed applications for Disability Insurance Benefits, Supplemental Security Income, and for a period of benefits. Her applications were denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Stuart Adkins concluded she was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed the present action. She seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner requests that the non-disability decision be affirmed.

1

This case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 10), the Commissioner's Memorandum in Opposition (Doc. No. 13), Plaintiff's Reply (Doc. No. 14) and the administrative record (Doc. No. 8).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since April 17, 2016. At that time, she was forty-seven years old. Accordingly, she was considered a "younger person" under Social Security Regulations. See 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c).[1] Plaintiff has at least a high school education.

The evidence of the record is sufficiently summarized in the ALJ's decision (Doc. No. 8-2, PageID 64-75), Plaintiff's Statement of Errors (Doc. No. 10), the Commissioner's Memorandum in Opposition (Doc. No. 13), and Plaintiff's Reply (Doc. No. 14). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"— as defined by the Social Security

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry— reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

3

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.   THE ALJ'S DECISION

As noted previously, the Administrative Law Judge was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

- Step 1: Plaintiff has not engaged in substantial gainful employment since her alleged onset date, April 17, 2016.

- Step 2: She has the severe impairments of degenerative disc disease, cervical spine; gastro-esophageal reflux disease ("GERD"); hepatitis C; unspecified intellectual disability; bipolar disorder; depression; anxiety; post-traumatic stress disorder ("PTSD"); and polysubstance abuse, including heroin, cocaine, and alcohol abuse.

- Step 3: She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Step 4: Her residual functional capacity ("RFC"), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work" subject to the following limitations: (1) can lift and/or carry 20 pounds occasionally

      and 10 pounds frequently; (2) can stand and/or walk for about 6 hours and sit for about 6 hours in an 8-hour workday; (3) can occasionally climb ladders, ropes, and scaffolds; (4) frequently crawl, (5) can perform simple tasks, but not at a production rate pace, (6) occasional interaction with supervisors and coworkers, but no interaction with the general public; and (7) can tolerate occasional changes in a routine work setting, defined as one-to-two changes per week.

 Step 4:  She cannot perform any of her past relevant work.

 Step 5:  She can perform a significant number of jobs that exist in the national economy.

(Doc. No. 8-2, PageID 66-74). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 75.

## V. DISCUSSION

 Plaintiff asserts that error occurred in evaluating the medical opinion of her psychiatrist, Dr. Pravesh Patel. She also contends that error was committed when evaluating the severity of her symptoms and her medication non-compliance.

 Social Security Regulations require ALJs to generally extend "greater deference…to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242. The Commissioner must afford controlling weight to a treating physician opinion when it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with the other substantial evidence in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).

5

If the opinion is not controlling, then the ALJ must consider the regulatory factors, which include "the length, frequency, nature, and extent of the treatment relationship as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Id*. (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Additionally, in discounting the weight given to a treating physician opinion, the ALJ must provide "good reasons" that are "supported by the evidence in the case record." *Id*. (citing Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). This "clear procedural requirement" certifies "that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5).

Dr. Patel's opinion was afforded "little weight," and was found to be undeserving of controlling weight because it was "inconsistent with substantial evidence of record." (Doc. No. 8-2, PageID 72-73). Likewise, the ALJ determined that his opinion was not entitled to great deference because it was "unsupported by his own treatment notes, other objective notes of record, and multiple other physician opinion evidence of record." *Id.*

Plaintiff argues that Dr. Patel's opinion was not inconsistent with, or unsupported by, the record. However, her assertions in this regard fall short. Dr. Patel treated Plaintiff on two occasions prior to rendering his opinion. His observations on mental status exam were the same on both occasions. Dr. Patel observed that Plaintiff was calm and

cooperative. (Doc. No. 8-10, PageID 1427, 1430). He found her thought process was tangential at times, but thought content was appropriate with no delusions. *Id.* Her attention, concentration, insight and judgment were fair, and memory was grossly intact. *Id.* Her mood was depressed/anxious, and affect was mood congruent and labile. *Id.* On the second visit, Dr. Patel noted Plaintiff's status was "improving." *Id.* at 1427.

Dr. Patel's opinion reflected primarily marked to extreme limitations, which means that he believed Plaintiff was, in large part, either seriously limited in her ability to function—or not able to function—independently, appropriately, effectively, and on a sustained basis in each respective area. *Id.* at 1448. But this is not supported by his treatment records. For instance, despite finding that Plaintiff's attention and concentration were "fair," Dr. Patel opined that Plaintiff would be extremely limited in her "ability to focus attention on work activities and stay on task at a sustained rate." *Id.* at 1449. Likewise, although he found her to be calm and cooperative with appropriate thought content, he offered a marked limitation in her "ability to relate to and work with supervisors, co-workers, and the public." *Id.* In addition to these opinions, Dr. Patel also indicated that she would be markedly limited in her "ability to learn, recall, or use information to perform work activities," and extremely limited in her "ability to regulat[e] [her] emotions, control [her] behavior, and maintain well-being in a work setting." *Id.*

Dr. Patel's opinions are also unsupported by other medical opinion evidence, such as the opinion of state agency reviewing psychologist, Dr. Melanie Bergsten, which was

7

afforded "great weight." (Doc. No. 8-2, PageID 72). Dr. Bergsten determined that Plaintiff had no more than moderate understanding and memory limitations, and that she would be "able to understand and remember 2-3 step tasks." (Doc. No. 8-3, PageID 184). She also found that Plaintiff had no more than moderate sustained concentration and persistence limitations, and that she would be "able to sustain concentration and persistence to perform 2-3 step tasks that are not fast-paced." *Id.* at 185. Dr. Bergsten further concluded that Plaintiff was not significantly limited in her ability to interact with others. *Id.*

For these reasons, the undersigned finds that substantial evidence supports the evaluation of Dr. Patel's opinions. However, the remainder of the non-disability decision is not without error. As mentioned at the onset, Plaintiff also contends that error occurred in evaluating the severity of her symptoms. More specifically, she argues that the ALJ's reliance on her medication non-compliance as an adverse factor was improper.

In years past, an assessment of symptom severity would have delved into the murky realms of credibility. *E.g., Rogers*, 486 F.3d 246-49; *cf. Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) ("The administrative law judge must … evaluate the applicant's credibility with great care. His responsibility is all the greater because determinations of credibility are fraught with uncertainty…." (citation omitted)). More recently, the Social Security Administration eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character…." Soc. Sec. R. 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017) (effective March 28, 2016).

The Social Security Administration uses a two-step process for evaluating an individual's symptoms. First, the ALJ must determine whether an individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* at *3. Second, the ALJ must evaluate the intensity and persistence of the individual's symptoms and determine the extent to which the individual's symptoms limit her ability to perform work-related activities. *Id.* at *4. To do this, the ALJ must examine the entire case record, including the objective medical evidence; the individual's relevant statements; statements and other information provided by medical sources and others; and any other relevant evidence in the record. *Id.* at *4-5.

In addition to all of the evidence, the ALJ should consider factors such as "the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; [and] the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms…" *Id.* at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3). As relevant here, "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* at *9. However, an ALJ "will not find an individual's symptoms inconsistent [] on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* Furthermore, it may even be necessary for the ALJ "to contact the individual regarding the

9

lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." *Id.*

In this case, when evaluating the severity of Plaintiff's symptoms, the ALJ heavily focused on Plaintiff's compliance with treatment. He explained:

> [Plaintiff] has been regularly non-compliant with medications and substance abuse, including as recently as 2018 (33F/6, 33F/29, 26F/69, 15F/134, 15F/138, 14F/65, 14F/72, 13F/7, 13F/13, 12F/33, 1F/101, 7F). [She] told her providers that she has difficulty remembering to take her medications, however, she admitted to her counselor, "I'll be honest with you. I haven't taken any of the medicine…I need someone to give me my medication because I won't take it." (14F/65). [She] eventually qualified for temporary in-home services on July 18, 2018, where a nurse visits her home for 30 minutes, twice per week, for 60 days, to reconcile her medication and give her an injection of her medication (33F/27-29, 33F/2). [She] also alleges that she lives with her boyfriend who helps provide care (Testimony). The 60-day program was set up to better instruct [her] on medication management (33F/25). [She] testified that despite the nurse visiting her home, she has not experienced improvement (Testimony 11:26:31AM, SSR 16-3p). However, before the program started, on July 2, 2018, the objective notes indicate that [her] status was "improving" (30F/2, 29F/4, 26F/45). The objective notes show that when [she] is compliant with treatment regimen and medication, her mood improves (26F/55, 15F/134, 15F/138).

(Doc. No. 8-2, PageID 71). To his credit, the ALJ did allude to one possible reason for non-compliance—which relates to Plaintiff's ability to remember to take her medication. *Id.* He found that this was not supported by the record. However, this alone does not mean that Plaintiff's medication non-compliance is not a symptom of her mental impairments.

Indeed, the Sixth Circuit has recognized "that ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state"

10

because "[f]or some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009). As the record reflects, Plaintiff has an unspecified intellectual disability, bipolar disorder, depression, anxiety and post-traumatic stress disorder. *Id.* She was prescribed medication, but did not always take her medication. At one point, Plaintiff reported that she did not "like the mediation" she had been prescribed. (Doc. No. 8-7, PageID 712). She also reported that she stopped taking her medication because she did not believe the medication was helping her. *Id.* at 716. Notably, when Plaintiff made this report, her provider noted she "appeared to be manic at the time of the assessment." *Id.* On the contrary, treatment records also indicate that she stops taking her medication when "she starts to feel better and thinks she doesn't need it anymore." (Doc. No. 8-8, PageID 970). Her decision-making regarding her medication appears to be sporadic.

It also seems significant that Plaintiff required "a nurse [to visit] her home for 30 minutes, twice per week, for 60 days, to reconcile her medication and give her an injection of her medication." (Doc. No. 8-2, PageID 71). This aligns with Plaintiff's previous report that she needs someone to assist her with mediation—and seems contrary to the Commissioner's position that Plaintiff simply chooses to stop taking her medication for reasons unrelated to her mental impairments. (Doc. No. 13, PageID 1521). Dr. Patel and Registered Nurse Rachael Davenport certified these services because Plaintiff was "exhibiting a considerable and taxing effort to leave home due to Bipolar Disorder as

11

evidenced by inability to cope due to non-compliance with medication regimen." (Doc. No. 8-10, PageID 1475). The plan of care further described that Plaintiff had "unstable mental status" and that these services were prescribed "due to need for Bipolar Disorder process management as evidenced by inability to self-manage medications." *Id.* at 1476.

Furthermore, at the hearing, Plaintiff's counsel indicated in her opening statement that Plaintiff "has past issues with medication compliance, which is also symptomatic of her bipolar disorder." (Doc. No. 8-2, PageID 90). Yet, there was no attempt by the ALJ to directly address the issue of non-compliance, or elicit possible reasons for Plaintiff's medication non-compliance, at the hearing. This is notable given the significant focus that the ALJ placed on Plaintiff's non-compliance in addressing her symptom severity.

For the reasons set forth above, the undersigned finds that error occurred in assessing Plaintiff's medication non-compliance because the ALJ did not sufficiently consider possible reasons for non-compliance before finding Plaintiff's statements to be inconsistent with the record. And, because there was significant reliance on her non-compliance in finding that Plaintiff's symptoms were not as severe as alleged, this error is not harmless. Accordingly, Plaintiff's Statement of Errors is well-taken.

## VI. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial

right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). A remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's Regulations and

13

Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

## IT IS THEREFORE ORDERED THAT:

1. The Commissioner's non-disability determination be **VACATED**;

2. No finding be made as to whether Plaintiff Angela D. Hardy was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case be terminated on the docket of this Court.

September 27, 2021  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge